# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE BARNARD,

    Plaintiff,

v.

LACKAWANNA COUNTY,

    Defendant.

CIVIL ACTION NO. 3:17-CV-00066

(JUDGE CAPUTO)

## MEMORANDUM

Presently before this Court is a Motion to Dismiss filed by Defendant Lackawanna County ("Defendant"). (Doc. 9). Because Plaintiff Michelle Barnard ("Plaintiff") has not properly pled that she is a "qualified individual" as defined by the Americans with Disabilities Act ("ADA") and her retaliation claim is predicated on Defendant's failure to accommodate her disability, Defendant's Motion to Dismiss will be granted.

## I. Background[1]

The well-pleaded facts, as set forth in Plaintiff's Complaint (Doc. 1), and supplemented by select exhibits provided by the parties, are as follows:

---

[1] The Complaint along with four exhibits were used to establish the facts analyzed for this motion. The four exhibits are: (1) the County Collective Bargaining Agreement with Prison Employees (Doc. 11, Ex. B); (2) the "Injury Report" provided by Plaintiff to Defendant (Doc. 11, Ex. A; Doc. 12, Ex. A); (3) Defendant's denial of Plaintiff's requested accommodation (Doc. 12, Ex. B), and (4) the transcript of testimony provided to the Unemployment Compensation Board of Review (Doc. 12, Ex. C). Explained in more detail below, this Court is generally limited to review the facts provided in the complaint when reviewing a motion pursuant to FED.R.CIV.P. 12(b)(6). But, it may also consider matters of public record, orders, exhibits attached to the complaint, and undisputedly authentic documents essential to the complaint. *See, e.g., Mayer v. Belichick,* 605 F.3d 223, 230 (3d. Cir. 2010). The exhibits of this nature, and those included here, are available for consideration without converting a Motion to Dismiss to a Motion for Summary Judgement. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir 2002).

Defendant is a municipal entity: Lackawanna County. Plaintiff, Michelle Barnard, has worked for the Defendant for over 15 years. During the relevant time, Plaintiff was employed by Defendant as a Prison Counselor at the Lackawanna County Prison.

On or about September 24, 2014 Plaintiff alleges that she suffered a work-related injury. Specifically, she suffered from a herniated disc. Months later, on or about April 13, 2015, Plaintiff provided Defendant with an "Injury Status Report" authored by Dr. Dean Mozeleski, M.D.. This report detailed the physical restrictions that Plaintiff would have as a result of her earlier, work-related injury. While Dr. Mozeleski's report indicated Plaintiff could only work on a part-time basis, Plaintiff immediately wanted to return to work. Upon her request to resume work with accommodation for her injury, however, Plaintiff's supervisor, Christina Oprishko, informed Plaintiff that she could not work until she had no physical restrictions.[2] Plaintiff was prohibited from working at the Prison.

Employment at the Lackawanna County Prison is governed by a Collective Bargaining Agreement ("CBA"). Plaintiff is a member of the bargaining unit covered by the agreement. In relevant part the agreement states:

> The County agrees to continue its established policy against all forms of illegal discrimination with regard to race, creed, color, national origin, sex, physical/metal handicap, [and/or] political affiliation . . . ."

(Doc. 11, Ex. B at 11). The agreement also established some essential terms of employment. For example, the agreement states that:

> The normal work week for regular full time employees shall consist of five (5) days with (2) consecutive days off within any seven (7) day period. A work day for a regular full time employee is to consist of eight (8) consecutive hours including one half hour meal period. . . . A normal work week is to consist of forty (40) hours. . . . There will be no split shifts.

---

[2] "I [Oprishko] informed [Plaintiff] that Lackawanna County Prison does not offer modified or part time work. I [Oprishko] informed her that she is to remain off of work until cleared to [return to work] without restriction." (Doc. 12, Ex. B).

2

(Doc. 11, Ex. B at 16-17). Notably, due to her injury, Plaintiff was unable to work a traditional, eight-hour work day. (Doc. 12, Ex. C at 12, 15). Rather, she requested to work on a part-time basis. (*Id.*)

In light of the above stated facts, Plaintiff filed the instant action asserting that Defendant's refusal to allow her to resume work constitutes a violation of the ADA. Specifically, Plaintiff claims that the Defendant violated the ADA by (1) discriminating against her due to her disability, (2) failing to reasonably accommodate her disability, and (3) retaliating against her for requesting an accommodation. Defendant has moved to dismiss all three claims in the single-count Complaint.

Defendant's motion has been fully briefed and is now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere

3

conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine

4

"exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, the Court may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc. v. Valley Forge Ins. Co.,* 424 Fed. App'x. 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A Court may also consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). At bottom, documents may be examined by this Court when ruling on a motion to dismiss when Plaintiff had proper notice of the existence of the documents.[3] *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

---

[3] Here, the complaint and four additional documents have been examined by this Court. Three documents were expressly referred to in the complaint: (1) the "restrictions note" or "Injury Report" (Doc. 1, ¶ 11), (2) the denial of accommodation (Doc. 1, ¶ 11), and (3) the unemployment hearing testimony (Doc. 1, ¶ 13). The final document, the CBA, while not expressly incorporated into the Complaint is able to be reviewed by this Court because the Complaint necessarily relies on its terms and it is a public record of which Plaintiff had appropriate notice. *See Angstadt v. Mid-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (noting that when a complaint challenges the reasonableness of a regulation, the complaint necessarily relied on those regulations and the district court could consider them on motion to dismiss even though they were not expressly incorporated into the complaint); *Children's Seashore House v. Waldman*, 197 F.3d 654 n.7 (3d Cir. 1999) (acknowledging that district courts may review the contents of public records on a motion to dismiss).

**III. Discussion**

Defendant moves to dismiss all three of the claims raised by Plaintiff in Count I of the Complaint: (1) Discrimination based on a disability in violation of the ADA; (2) Failure to reasonably accommodate a disability in violation of the ADA; and (3) Retaliation following protected employee activity in violation of the ADA.

**A. Plaintiff's ADA Claims - Discrimination and Failure to Accommodate**

Under the Americans with Disabilities Act (ADA), it is clear that covered employers are prohibited from discriminating "against a qualified individual on the basis of disability in regard to" most employment decisions. 42 U.S.C. § 12112(a). It is similarly clear that employers are tasked to provide disabled employees reasonable accommodations. *See* 42 U.S.C. 12112(b)(5); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 395-96 (2002). In order to plead a *prima facie* case of discrimination or failure to accommodate under the ADA, a plaintiff must allege facts showing that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville School Dist.*, 184F.3d 296, 306 (3d Cir. 1999) (citing *Gaul v. Lucent Technologies*, 134 F.3d 576 580 (3d Cir. 1998); *see Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009) (internal quotation omitted). Here, it appears undisputed that Plaintiff has sufficiently pled a disability and an adverse employment consequence, thus satisfying the first and third prongs of the required showing. Therefore, at the core of this motion is the definition of "qualified individual."

The ADA defines a qualified individual as one "who, with or without reasonable accommodations, can perform the essential functions of the employment position that such individual holds or desires." See 42 U.S.C. § 12111(8). As such, the designation of

6

"qualified individual" is dependant on the allegedly aggrieved employee being able to perform the essential functions of the job in question. An essential function is a function "fundamental" to the position. 29 C.F.R. § 1630.2(n)(1). To determine whether or not a function is fundamental, courts look to numerous factors, including, but not limited to:

> (I) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

*Kurek v. North Allegheny School Dist.*, 223 Fed. App'x 154, 157 (3d Cir. 2007) (citing 29 C.F.R. § 1630.2(n)(1)). At bottom, the question is whether an employee is able to show that "he/she satisfies the requisite skill, experience, education, and other job-related requirements of the employment position that such individual holds or desires." *Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318 (3d Cir. 2003).

Here, Plaintiff contends that she has sufficiently pled that she is a "qualified individual." Without direct reference, Plaintiff suggests that since "there were positions available that [Defendant] could have provided to Plaintiff within her restrictions," she must be considered a "qualified individual" because she could perform the essential functions of a job if provided an accommodation; namely a part-time work schedule.

Defendant disagrees noting that there were no other positions available that Plaintiff could perform the essential function of with her restrictions. To illustrate that Plaintiff was

factually incorrect in her pleading, Defendant first points to the CBA[4] to establish the essential functions of a prison employee's job. As noted above, courts look to the terms of a CBA to help determine whether a particular duty is an essential function of a given job. *Kurek*, 233 Fed. App'x. at 157.  In this case, the CBA is clear. It states that "a normal work week is to consist of forty (40) hours for all bargaining unit employees including Counselors." (Doc. 11, Ex. B at 16). Further, the agreement notes that "[a] work day for a regular full time employee is to consist of eight (8) consecutive hours" (*id.*) and that "[t]here will be no split shifts" allowed. (*Id.* at 17). Citing this language from the CBA, Defendant contends that since Plaintiff alleges that she was unable to work the hours as defined by the CBA, she was unable to perform the "essential functions" of the job, and therefore her reliance on the existence of part-time work at the prison to establish she is a "qualified individual" is misplaced. This Court agrees.

Defendant persuasively cites to *Clarke-Kurek v. North Allegheny School District* to suggest that terms contained within the CBA related to the number of hours to be worked by employees establishes an essential function of a job. In *Kurek*, the District Court–later affirmed by the Third Circuit–found that a teacher was not a "qualified individual" under the ADA when she could not work a full 7-3/4-hour day as prescribed by a controlling CBA. *Clarke-Kurek v. North Allegheny School Dist.*, No. 04-0208, 2006 WL 1073158, * 6 (W.D. Pa. Mar. 27, 2006), *aff'd* 233 Fed. App'x. 154 (3d Cir. 2007). In reaching its conclusion the *Kurek* Court noted that "Plaintiff cannot seriously dispute that . . . working a 7-3/4-hour workday is an essential function of the job of a teacher," when it has been established in a

---

4    Again, this document was necessarily relied upon by Plaintiff in her Complaint, and was attached to Defendant's Motion to Dismiss. Further, the document is a public record. Thus, the document may be reviewed by this court. *See In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *Mayer*, 605 F.3d at 230; *Am. Corp. Soc.*, 424 Fed. App'x. at 86.

formal writing provided to the Plaintiff.

This Court agrees that the express terms of a CBA establish the "essential functions" of a particular job or set of jobs. Here, like in *Kurek*, a controlling CBA agreement exists, and is necessarily relied upon by Plaintiff to assert that part-time positions were available at the Prison. However, the agreement supports the contrary. The CBA expressly states the hours employees are to maintain in order to work in Defendant's prison. Thus, if the Plaintiff was unable to work "a normal work week" consisting of five days of "eight consecutive hours" totaling forty (40) hours with or without a reasonable accommodation, then Plaintiff is not a qualified individual.

Plaintiff alleges no fact in her fourteen-paragraph Complaint to suggest that she could work under these conditions. In fact, Plaintiff avers the opposite. The "Injury Report" provided by Plaintiff and relied upon in the Complaint expressly states that Plaintiff is limited to "part-time" work. Plaintiff even stated she could not perform on a "full-time basis" during her testimony before the Unemployment Compensation Board of Review.[5] Additionally, the documents offered by Plaintiff to suggest her accommodation was denied states that Plaintiff was seeking "modified or part-time work." Again, no fact was pled that suggests that Plaintiff would be able to perform the "essential functions" of her job as defined by the CBA. As such, Plaintiff has not properly pled that she is a "qualified individual" under the ADA.

Further, it is well settled that "employers are not required to accommodate an employee by removing an essential function" of the employee's position. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 285 n.4 (3d Cir. 2001); *see Irving v. Chester Water Authority*, 439 Fed. App'x 125, 127 (3d Cir. 2011); *Kessler v. AT&T*, No. 13-CV-00207, 2015 WL 5598866, *6 (M.D. Pa. Sept. 22, 2015). As was discussed above, it was an essential

---

[5] Plaintiff misrepresented the testimony provided in this hearing in her complaint. (Doc. 1, ¶ 13).

function of Plaintiff's job to work an eight-hour shift five days each week. Moreover, as specifically provided by the CBA: "there will be no split shifts allowed." Thus, Plaintiff's request for an accommodation that would serve to reduce the amount of time she would have to work each day is equivalent to requesting an accommodation to remove an essential function of the job. This is impermissible.

Plaintiff's claims for discrimination and failure to accommodate will be dismissed because Plaintiff has failed to plead the *prima facie* case required under the ADA.

### B. Plaintiff's Retaliation Claim

In relevant part the ADA provides, regarding retaliation, that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. §12203(a). Thus, in order to properly plead a *prima facie* case of retaliation under the ADA a Plaintiff must state: (1) a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted).

To support her claim of retaliation, Plaintiff has pled the following: "Plaintiff was retaliated against after requesting accommodations since Defendant continued to refuse to allow Plaintiff back to work in a light duty capacity." Additionally, Plaintiff has provided an exhibit–referenced by Defendant–that shows on April 13, 2015 Plaintiff was informed that she could not work at the prison until cleared to return to work without restriction.

Defendant believes this pleading is insufficient and the claim should be dismissed for two reasons. First, Defendant contends that Plaintiff suffered the alleged adverse

employment decision prior to requesting the accommodation. As pled, this is incorrect. Plaintiff pled that she submitted a "return to work with restrictions note"–her basis for the request of an accommodation–on or about April 13, 2015. Plaintiff also pled that the adverse action suffered, being prevented from working with restriction, occurred on the same day. Thus, Plaintiff has pled that she suffered an adverse impact contemporaneously with, not prior to, the request for an accommodation. As such, Defendant's first argument fails to provide dismissal.

Second, Defendant contends that Plaintiff's retaliation claim fails as a matter of law because a retaliation claim may not be based solely on a theory of failure to accommodate. The Third Circuit has noted that a "failure to accommodate theory . . . cannot be characterized as a retaliation claim under the ADA. The claim is a direct discrimination claim based on alleged failures to fulfill the affirmative duties prescribed by the ADA, not a claim based on alleged actions prohibited by the ADA." *Solomon v. Sch. Dist. of Phila.*, 882 F. Supp. 2d 766, 783 (E.D. Pa. 2012) (citing *Pagonakis v. Express LLC*, 315 Fed. App'x. 425, 431 (3d Cir. 2009)). District Courts routinely dismiss retaliation claims that simply "repackage" claims that an employer failed to offer accommodations. *See, e.g.*, *Garner v. Sch. Dist. of Phila.*, 63 F. Supp. 3d 483, 500 (E.D. Pa. 2014) (dismissing a retaliation claim where Plaintiff's claim was "nothing more than a repackaged statement of his underlying claims that [his employer] failed to reasonably accommodate his disability."); *Solomon*, 882 F. Supp. 2d at 783; *Williams v. Phila. Hous. Auth.*, 230 F. Supp. 2d 631, 639 n.10 (E.D. Pa. 2002) ("Plaintiff's claim, to the extent that it is based upon the defendant's denial of his request for a reasonable accommodation, is stated as a retaliation claim in form, but is, in substance, a claim of failure to accommodate."). Here, Plaintiff makes no averment to provide any basis for the retalition claim other than that she was denied an accommodation and was thereforein unable to return to work. Thus, she has not stated a claim separate

11

and apart from the discrimination and failure to accommodate claims that this Court has already addressed. Because a retaliation claim is not properly predicated on a theory of failure to accommodate, Plaintiff's claim alleging just that will be dismissed.

### IV. Conclusion

Because Plaintiff has not properly pleaded that she is a qualified individual under the ADA, and a retaliation claim can not be predicated on a failure to accommodate, Plaintiff's claims will be dismissed without prejudice.[6]

An appropriate order follows.

September 25, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge

---

[6] The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Because Plaintiff could replead the Complaint to provide alternative grounds to establish that she was a "qualified individual" and/or retaliated against, this Court will grant Plaintiff leave to amend.

12